767 So.2d 955 (2000)
Hillary L. SCHACKAI
v.
LOUISIANA BOARD OF MASSAGE THERAPY. (Two Cases)
Nos. 99 CA 1957, 99 CA 1958.
Court of Appeal of Louisiana, First Circuit.
September 22, 2000.
*956 Rowena T. Jones, New Orleans, for PlaintiffAppellant Hillary L. Schackai.
E. Wade Shows, Carlos A. Romanach, Baton Rouge, for DefendantAppellee Louisiana Board of Massage Therapy.
Before: WHIPPLE, FOGG, and BECNEL,[1] JJ.
FOGG, J.
The salient issues raised on appeal in this administrative law case concern the licensing of massage therapists and the requirement of a registration certificate for massage establishments under the Louisiana Massage Therapists and Massage Establishments Act, LSA-R.S. 37:3551 et seq. The district court affirmed a ruling of the Louisiana Board of Massage Therapy imposing fines for various violations. For the following reasons, we reverse.
Hillary Schackai graduated from massage therapy school in 1991. At that time, there were no licensing requirements for massage therapists. In 1992, the Louisiana Massage Therapists and Massage Establishments Act, LSA-R.S. 37:3551 et seq., was enacted. Among other things, the Louisiana Board of Massage Therapy, created by this act, was charged with the licensing of massage therapists and the registration and certification of massage establishments. LSA-R.S. 37:3555; LSA-R.S. 37:3558. Subsequently, Ms. Schackai complied with the requirements for licensure as a massage therapist, paid her license fee, and was issued a license, which was effective from January 1, 1995 through December 31, 1995.
On February 14, 1996, the board sent a form letter entitled "Notice of Suspension of License" to Ms. Schackai, informing her that she was no longer eligible to practice massage therapy in the State of Louisiana. The notice included a warning about practicing without a license; however, it did not provide any explanation for the suspension or instructions on how to have the *957 suspension revoked. Additionally, in the notice, the board did not mention the requirement of a certificate of registration for massage establishments.
Shortly thereafter, Ms. Schackai sent the board a check for $50.00 and a handwritten note, which stated:
To the Board of Massage Therapists,
I'm not sure how to go about rectifying my suspension. Hopefully the first step is to send in my $50. Please notify me of the second. I'm in Vermont until mid April but am occasionally receiving mail via my permanent address.
 /s/ Hillary
 LA# 0262
 Hillary Schackai
The board accepted and deposited Ms. Schackai's check, but sent no additional information to Ms. Schackai. A correspondence sheet maintained by the board included a notation that a "Cease and Desist" notice was sent out and a notation that $50.00 was received, as well as the following notation: "no late fee. No proof of estab." However, there is no indication on the correspondence sheet that renewal forms or any notice regarding massage establishment registration were sent to Ms. Schackai.
A notation on the correspondence sheet, dated March 4, 1996, indicates that a telephone conversation occurred between the board and Ms. Schackai and states: "Needs to pay late fee and send us a letter stating she is not practicing in La." Again, there is no indication on the correspondence sheet that Ms. Schackai was verbally informed that registration and certification of a massage establishment was required.
On January 10, 1997, Ms. Schackai wrote to the board using stationery on which her license number was printed; the letter provided, in pertinent part, as follows:
Hilairie Schackai[2] Massage Therapy LOUISIANA LICENSE 0262
. . . .
I am writing to you to seek your approval. I have yet to fulfill the required hours of continuing education in order to renew my license for 1997. I am aware that the Board has granted an undefined grace period for us practitioners to secure our CEU's. Will the board accept a completed course by March 23, one providing a total of 50 hours of continuing education? If so I would like to apply the required minimum of 12 hours to the year of 1996 and the remaining 38 to this year of 1997.
I am enclosing my license renewal fee of 50 dollars in anticipation of your acceptance.
Once again, the board accepted and deposited Ms. Schackai's check, and documented the receipt of the check on the correspondence sheet with the notation: "1.10.97 Received $50w/letter asking for extenion (sic) for CEU's. No late fees for 96 or 97." Again, there is no evidence in the record that the board responded to Ms. Schackai's request for information or that registration of a massage establishment was discussed.
On or about February 18, 1997, Ms. Schackai telephoned the board's office and spoke with Ms. Kayla Aymond. During this conversation, Ms. Aymond informed Ms. Schackai that, in addition to the late fees for the massage therapist license, she was also responsible for certificate fees for registration as a massage establishment and for late fees associated with the registration certificate for 1995, 1996, and 1997. Ms. Schackai testified that, during this conversation, she tried to explain to Ms. Aymond that she should not be required to register an establishment because she was not practicing and, once licensed, her practice would be limited to out-calls, which are *958 massages performed at the client's home or office.
Ms. Aymond, on the other hand, testified that Ms. Schackai said that she was doing out-calls, and this constituted a major violation because Ms. Schackai did not have a license in 1996. Interestingly, Ms. Aymond's notation on the correspondence sheet made no mention of Ms. Schackai practicing without a license or holding herself out as a massage therapist without a license. The notation simply stated: "2.18.96 Talked w/ Hillary stated she was upset that would need to pay $25-96, $25, 97, $75 & $25-96, 75 & 25-97, told her to send letter to board."
On February 26, 1997, Ms. Schackai once again wrote to the board on stationery that included her license number; the letter provided, in pertinent part, as follows:
Hillary Schackai Massage Therapy LOUISIANA LICENSE 0262
. . . .
I have been very concerned about the status of my license, the possibility of it not being renewed, and any fines or penalties that the Board might mete; in an abundance of caution, I have secured legal representation to help me with these complicated legal issues that I do not fully understand. So, I am asking the Board, from this time forward, to send all correspondence to me care of my attorney, Mr. Michael Stewart, Schafer and Schafer Attorneys-at-Law, 328 Lafayette Street, New Orleans, LA 70130 ....
In direct contravention to Ms. Schackai's request to have all communications sent to her attorney, on April 15, 1997, the board sent a notice of hearing solely to Ms. Schackai. That correspondence was entitled:

In The Matter Of Hillary Schackai, M.T. License No. LA0262
The notice raised only one charge, that Ms. Schackai had been practicing massage therapy without a license. The notice of hearing on that charge was returned as undelivered by the post office.
Nonetheless, on May 15, 1997, the board convened a hearing without the presence of Ms. Schackai. On May 17, 1997, the board rendered a decision, finding that Ms. Schackai was guilty of practicing massage therapy without a license and of practicing without a valid massage establishment registration certificate. She was fined $2,000, plus costs and late fees. The board did send Ms. Schackai's attorney a copy of that decision.
Ms. Schackai, through her attorney, filed a timely petition seeking judicial review of the board's ruling, asserting that the hearing was improper because Ms. Schackai was not notified of the hearing; that case was assigned trial court number 439,702. The district court stayed that proceeding and referred the matter back to the board.
Consequently, the board sent a notice of an informal hearing, once again with no copy to Ms. Schackai's attorney. That notice referred to Ms. Schackai's license number and raised only one charge, that Ms. Schackai had been practicing massage therapy without a license. No agreement was reached at the informal hearing.
On February 25, 1998, the board sent notice of an administrative hearing and a rule to show cause to Ms. Schackai; again, no notice was sent to her attorney. The only charge listed in the notice is as follows: "You acted as or performed the duties of a massage therapist without possessing a current license issued pursuant to the rules and laws governing the Louisiana Board of Massage Therapy."
A hearing was held and testimony taken, after which the board rendered a final *959 order, finding that Ms. Schackai represented herself to be a licensed massage therapist and/or acted as a licensed massage therapist and did not possess a massage establishment registration certificate. The board then imposed the following conditions before a current license would be issued to her:
1. Pay $1,000.00 for practicing massage therapy without a valid professional license; and pay $1,000.00 for practicing massage therapy without an establishment license;
2. Pay all late fees for the license years of 1996, 1997 and 1998;
3. Pay all fees for a 1998 individual license;
4. Pay all fees for an establishment license for the years of 1996, 1997 and 1998; and
5. Pay fifty percent (50%) of all of the board's attorney fees, hearing officer fees, board member fees and court reporter fees associated with the hearing.
On May 16, 1998, the board again sent its decision by certified mail to Ms. Schackai, with no notice or copy sent to her attorney. On July 17, 1998, Ms. Schackai filed a pro se second petition, seeking judicial review of the board's decision.[3] The district court affirmed the board's decision. Ms. Schackai appealed the judgment of the district court, and the board filed, with this court, an exception of peremption, which was referred to the merits.
We first address the board's exception of peremption. The board argues that the thirty-day period for seeking judicial review of any final decision or order rendered by an administrative agency provided under LSA-R.S. 49:964(B) is peremptive rather than prescriptive. It contends that the mailing by the board of formal notice of its decision to Ms. Schackai on May 16, 1998, triggered the thirty-day peremptive period and her failure to appeal within thirty days divested the district court and this court of jurisdiction.
In the instant case, Ms. Schackai requested that all correspondence be sent to her attorney. However, the board continuously ignored that request and forwarded correspondence directly to Ms. Schackai without sending a copy to her attorney. The only time the board complied with Ms. Schackai's request was when the board sent a copy of its first decision to Ms. Schackai's attorney. This breach would be troublesome in and of itself; however, in the instant case, not only did Ms. Schackai request that all correspondence be sent to her attorney, once she made the request, the law demands it.
LSA-R.S. 49:958 states:
A final decision or order adverse to a party in an adjudication proceeding shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. If, in accordance with agency rules, a party submitted proposed findings of fact, the decision shall include a ruling upon each proposed finding. Parties shall be notified either personally or by mail of any decision or order. Upon request, a copy of the decision or order shall be delivered or mailed forthwith to each party and to his attorney of record. The parties by written stipulation may waive, and the agency in the event there is no contest may eliminate, compliance with this Section. (Emphasis added.)
The board argues that Bailey v. Cajun Insulation, 453 So.2d 237 (La.1984) controls in this situation. In that case, the *960 Louisiana Supreme Court held that due process does not require that the attorney be notified if the party represented by that attorney has been sent notice. The ruling in that case is inapplicable herein. In Bailey, unemployment compensation was at issue. An appeal from a decision of the unemployment board is subject to the requirements of LSA-R.S. 23:1630 which states in pertinent part, "Such decision shall be final unless, within fifteen days after the mailing of notice thereof to the party's last known address." (Emphasis added.) In unemployment cases, the law only requires that the party receive notification. That is distinctly different from the instant case where the statute requires notification to the party and the attorney of record.
As stated previously, Ms. Schackai wrote to the board and requested that all correspondence be forwarded to her attorney. However, the board failed to do so. Therefore, the time for appealing did not run and the appeal, filed on July 17, 1998, was timely.
On appeal, Ms. Schackai asks this court to review the decision of the board, raising three assignments of error. Judicial review of a decision of an administrative agency is set forth in LSA-R.S. 49:964. The Administrative Procedure Act, LSA-R.S. 49:950 et seq., specifies that judicial review shall be confined to the record, as developed in the administrative proceedings. LSA-R.S. 49:964(F). The reviewing court may reverse or modify the agency decision if substantial rights of the appellant are prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by error of law; (5) arbitrary, capricious, or characterized by an abuse of discretion or clearly unwarranted exercise of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court. LSA-R.S. 49:964(G); Pacificorp Capital, Inc. v. State, Through Div. of Admin., 92-1729 (La.App. 1 Cir. 8/11/94), 647 So.2d 1122, writ denied, 94-2315 (La.11/18/94), 646 So.2d 387.
The arbitrary and capricious test is used in reviewing the administrative tribunal's conclusions and its exercise of discretion. Save Ourselves, Inc. v. Louisiana Envtl. Control Comm., 452 So.2d 1152 (La. 1984). A conclusion of a public body is "capricious" when the conclusion has no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. Coliseum Square Ass'n v. City of New Orleans, 544 So.2d 351 (La.1989); Burke v. Baton Rouge Metro, 97-0947 (La.App. 1 Cir. 5/15/98), 712 So.2d 1028. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. Coleman v. Lewis, 99-0094 (La.App. 1 Cir. 3/31/00), 757 So.2d 907. On legal issues, the reviewing court gives no special weight to the findings of the administrative tribunal, but conducts a de novo review of questions of law and renders judgment on the record. See State, Through Louisiana Riverboat Gaming Comm. v. Louisiana State Police Riverboat Gaming Enforcement Div., 95-2355 (La.App. 1 Cir. 8/21/96), 694 So.2d 316.
In her first assignment of error, Ms. Schackai contends the board erred in finding that she practiced massage therapy without a license. The board's final order found that Ms. Schackai "has been guilty of representing herself to be a licensed massage therapist and/or acted as a licensed massage therapist." In asserting that Ms. Schackai fraudulently represented herself as a licensed massage therapist, the board relies on LSA-R.S. 37:3553 which states, in part: "no person shall in any way hold himself out or designate *961 himself as a massage therapist unless duly licensed by the board in accordance with this Chapter." The board also relies on LAC 46:XLV.5301A(5), which provides:
A. The following acts shall constitute misconduct in the practice of massage therapy for which disciplinary penalties may be imposed:
. . . .
5. making deceptive, untrue, or fraudulent representations in the practice of massage.
Our review of the record reveals that only three pieces of evidence address this issue: the testimony of Ms. Aymond and Ms. Schackai regarding their telephone conversation of February 18, 1997 in which the confusion arose as to whether or not Ms. Schackai was then currently providing out-call massages; the testimony of Ms. Schackai's mother; and the letterhead utilized by Ms. Schackai in corresponding with the board.
During the telephone conversation with Ms. Aymond, while attempting to get her massage therapist license reinstated, Ms. Schackai argued strenuously that she did not need to obtain an establishment registration certificate because she was not practicing and, once licensed, she would only be providing out-call massages and would not be opening a massage establishment. Ms. Aymond, on the other hand, testified that, during this conversation, Ms. Schackai said she was performing out-call massages; however, this statement is not supported by Ms. Aymond's notes on the correspondence sheet which did not mention practicing without a license in describing the conversation. Furthermore, Ms. Schackai's mother testified that her daughter was not and had not provided any massages during the time her license was suspended. Other than Ms. Aymond's testimony, the board introduced no evidence to support a finding that Ms. Schackai had been providing massages.
The board asserts further that Ms. Schackai misrepresented in her letterhead that she was a licensed massage therapist, that implicit from her letterhead is the fact that massage therapy was being practiced by her at the listed address, and that this argument is buttressed by Ms. Schackai's reference to herself as a "practitioner" in one of her letters. While it is true that Ms. Schackai did send the board the above referenced letterhead, there is no evidence in the record that Ms. Schackai used that letterhead on any other occasion that would arguably reach or mislead the public. Rather, use of her license number was solely in correspondence with the authority charged by the Louisiana Legislature with licensing and regulating that industry. We find that Ms. Schackai's use of letterhead, that included the title of massage therapist and her license number, in correspondence to the licensing board responsible for that license, does not constitute holding herself out or designating herself as a massage therapist or making deceptive, untrue, or fraudulent representations in the practice of massage. Considering the entire record, we find that a preponderance of the evidence supports the conclusion that Ms. Schackai did not act as a licensed massage therapist or represent herself to be a licensed massage therapist during the time that her license was suspended. Therefore, we reverse the board's ruling that Ms. Schackai is guilty of acting as a licensed massage therapist and representing herself to be a licensed massage therapist.
In her second assignment of error, Ms. Schackai asserts the board's decision that she is required to maintain a certificate of registration of a massage establishment is erroneous. LSA-R.S. 37:3552 provides the following definition: "Massage Establishment" means any place of business in which massage therapy is practiced by a massage therapist. LSA-R.S. 37:3558 provides that massage establishments "shall register with the board as provided in accordance with its rules." LAC 46:XLV.2301 provides for the licensure of massage establishments. LAC *962 46:XLV.2501 provides for safety and sanitary requirements for massage establishments, including such things as each massage establishment must comply with all state and local building fire and safety code requirements, provide for safe and unobstructed human passage in the public areas of the premises, maintain on the premises a fire extinguisher in good working condition, and exterminate all vermin, insects, termites, and rodents on the premises. LAC 46:XLV.2701 provides for the inspection of establishments as part of the licensing procedures.
The interpretation of any statute begins with the language of the statute itself. Touchard v. Williams, 617 So.2d 885 (La.1993). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and its letter shall not be disregarded in search of the intent of the legislation or under the pretext of pursuing its spirit. Hughes v. Carroll Timber Co., 96-0031 (La.App. 1 Cir. 10/1/96), 694 So.2d 331. We are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. First Nat'l Bank of Boston v. Beckwith Mach. Co., 94-2065 (La.2/20/95), 650 So.2d 1148. The courts may not extend statutes to situations, which the legislature never intended to be covered thereby. Hughes, 96-0031 at 6, 694 So.2d at 335. Furthermore, the principle is well established that an administrative agency must act in conformity with its statutory authority, which it cannot exceed. Benson & Gold Chevrolet, Inc. v. Louisiana Motor Vehicle Comm., 403 So.2d 13 (La.1981).
The statutes and rules clearly provide that a massage establishment is a physical location of business; they address matters such as safety, inspections, and pest control. If we accept the board's contention that nothing under the Louisiana Massage Therapists and Massage Establishments Act prohibits it from requiring a massage establishment certificate of every licensed therapist, we would be required to ignore all references in the statutes to the physical requirements for massage establishments. An individual providing massages on a out-call basis could not comply with the physical requirements of the statutes, as out-call massages are performed at the client's homes and businesses, not in the home or business establishment of the massage therapist. Accordingly, we conclude that the board erred in determining that Ms. Schackai must maintain a massage establishment registration certificate. Considering the foregoing, Ms. Schackai's final assignment of error is moot.
For the foregoing reasons, the exception of peremption is denied. The judgment of the district court affirming the ruling of the Louisiana Board of Massage Therapy is reversed, except for the assessment of late fees for past licenses and current license fees. All district court and appellate court costs, in the sum of $2,532.39, are assessed against the Louisiana Board of Massage Therapy.
EXCEPTION OF PEREMPTION DENIED; JUDGMENT REVERSED.
NOTES
[1] Judge Mary Hotard Becnel of the Fortieth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] This is the only place in the record that Ms. Schackai's first name is spelled Hilairie.
[3] On motion of the board, the district court consolidated the two pending proceedings. Therefore, this appeal record is comprised of two suits, No. 439,702 (the petition asserting that the first hearing was improper because Ms. Schackai was not notified of the hearing) and No. 451,802 (the petition seeking review of the board's second decision).